# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

| | |
|---|---|
| CONNIE F. PERRIN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Case No.: 1:10-cv-810 |
| WILLIAM C. FENNELL, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

On July 20, 2010, Plaintiff Connie F. Perrin ("Perrin") filed in this Court an action against Defendants Ernest Rushing, Jr., William Fennell ("Fennell"), Thomas Sperlazza ("Sperlazza"), and William Porter ("Porter") (collectively "Defendants").[1] Perrin, proceeding *pro se*, alleges that Defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, and the Rehabilitation Act of 1973, 28 U.S.C. § 791 *et seq.*, by requesting certain medical documentation during her nine-month work absence, and by refusing to grant her certain accommodations while she underwent chemotherapy treatment.[2] The matter comes now before this Court on Defendants' Motion for Summary Judgment. The parties have fully briefed and

---

[1] Perrin has named as Defendants four current or former United States government employees. Though Perrin never explicitly states that her suit is against Defendants in their official capacity, the statutes under which she asserts her claims specify that the proper defendant is the "head of the department, agency, or unit, as appropriate." 42 U.S.C. § 2000e-16(c); 29 U.S.C. § 794a(a)(1). Perrin should have named as Defendant the Secretary of the Department of the Navy rather than individual employees. The Court therefore reads Plaintiff's Complaint as naming Defendants in their official capacities only.

[2] In her Complaint, Perrin also alleges violations of the Americans with Disabilities Act, 42 U.S.C. § 12117a. *See* Compl. 1-2. The Rehabilitation Act is "the exclusive means" by which a plaintiff may raise claims of disability discrimination in federal employment. *Hockaday v. Brownlee*, 370 F. Supp. 2d 416, 422 (E.D. Va. 2004). As such, any ADA claims pursued by Perrin are subject to dismissal. The Court therefore construes Perrin's claims as advanced under the Rehabilitation Act and Title VII alone.

argued the Motion, and the matter is ripe for disposition. For reasons set forth below, this Court hereby grants Defendants' Motion for Summary Judgment.

*Jurisdiction and Venue*

Perrin brought this action to redress alleged deprivations of her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, and the Rehabilitation Act of 1973, 28 U.S.C. § 791 *et seq.* The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

A substantial part of the events that gave rise to Perrin's claims occurred on the Marine Corps Base at Quantico, Virginia. Quantico is located within the Eastern District of Virginia. Therefore, venue properly lies in this Court under 28 U.S.C. § 1391(e).

*Factual Background*

The undisputed material facts can be summarized as follows. At all times material to this case, Perrin, an African American female, was employed as a Wastewater Treatment Operator in the Facilities and Logistics Services Section ("FLSS"), Marine Corps Base, Quantico, Virginia. Gov't Mem. in Support of Mot. Summ. J. ("Gov't Mem."), Ex. 1, Position Description ("Position Description") 1; Gov't Mem., Ex. 2, Affidavit of Connie F. Perrin ("Perrin Aff.") 1. The position description for Wastewater Treatment Operator indicates that that the position involves "lifting heavy objects, equipment, and tools." Position Description 4. The position description also indicates that the operator may be exposed to "the pressure of gasses and fumes such as methane, chlorine, and carbon monoxide," and is "typically exposed" to chemicals such as "lime, aluminum sulfate, caustic, acids, polymers, chlorine, and others." *Id.* at 5.

Perrin's first-line supervisor was William Porter, the Wastewater Treatment Plant Operator Supervisor. Perrin Aff. 1; Gov't Mem., Ex. 3, Affidavit of William W. Porter 1. Perrin's second-line supervisor was Thomas Sperlazza, the Utilities General Foreman. Perrin

2

Aff. 1; Gov't Mem., Ex. 4, Affidavit of Thomas Edward Sperlazza 1. William Fennell, the Facilities Manager, was the Director of FLSS. Gov't Mem., Ex. 5, Affidavit of William C. Fennell ("Fennell Aff.") 1.

In November 2003, Perrin requested 240 hours of advanced sick leave to cover an absence due to surgery. Gov't Mem., Ex. 35, Perrin's 2003 Leave Request 1. Sperlazza requested that Perrin provide medical documentation to support her request for sick leave. *Id.* at 2. Perrin signed a medical release form on November 4, 2003. *Id.* at 4. She also provided notes from her doctors, one of which indicated that her surgery would occur on December 1, 2003, and that her recovery time would be six weeks. *Id.* at 7. Fennell approved Perrin's request for 240 hours of advanced leave, noting that approval "was conditional and based on the requestor providing additional medical documentation to support the extended absence [through] January 16, 2004." *Id.* at 10.

The following year, on or about July 31, 2004, Perrin notified her supervisors that she would again need to take leave for "an unforeseen medical problem" requiring surgery. Compl., Ex. A-1, July 31, 2004 Email from C. Perrin to W. Porter. Perrin indicated that she had scheduled the surgery for August 19, and that her recovery time had not been determined. *Id.*

On or about August 2, 2004, Perrin provided a "Duty Status Form," signed by Dr. James Daniel, indicating that she would not be able to perform work for approximately two weeks following the operation. Compl., Ex. A-3, Duty Status Report 2. Perrin also provided a letter from Dr. Daniel stating that Perrin's "postoperative recovery period is estimated to be approximately two to three weeks," but that her return date to work "was difficult to establish." Compl., Ex. A-2, Letter from James McDaniel. Perrin's leave balances for the pay period ending

3

August 21, 2004 were zero hours of annual leave, zero hours of sick leave, and 138.75 hours of donated leave. Gov't Mem., Ex. 24, Employee History Report.

On October 11, 2004, Perrin provided to her supervisors a physician's note from Dr. W. Angus Muir. The note simply stated, "Pt. must be out of work for about 3 months." Compl., Ex. B-1, Oct. 11, 2004 Note from W. Angus Muir. Dr. Muir also completed a section of Perrin's disability claim form, indicating that Perrin would likely return to work in three months, and that her impairment was temporary. Gov't Mem., Ex. 11, Disability Claim Form 3.

One week after receiving Dr. Muir's note, Porter requested additional medical documentation from Perrin. Gov't Mem., Ex. 12, Oct. 18, 2004 Note from W. Porter to C. Perrin. According to Defendants, the requested documents consisted of a "Request for Medical Information Form" and a "Medical Release Form," neither of which Perrin ever submitted. Gov't Mem. ¶ 10. Perrin admits that she did not "fill out the additional request for her medical release form," but claims she completed all other paperwork requested of her. Pl.'s Mem. in Opp'n ("Opp'n") 4. According to Perrin, the release form request violated her rights. *Id.*

On November 22, 2004, Perrin requested that Fennell allow her "to borrow 240 hours of sick or annual leave" due to her "chemo-treatment for cancer." Gov't Mem., Ex. 13, Nov. 22, 2004 Note from C. Perrin to W. Fennell. Perrin also approached Fennell directly with requests for advanced leave and/or a reassignment outside of the Wastewater Treatment Plant. Perrin Aff. 3; Fennell Aff. 3. Fennell verbally denied Perrin's request for a reassignment because the department had "no light duty positions" available. Fennell Aff. 3. Fennell denied Perrin's request for advanced leave because, under "organizational policy," no employee was permitted 240 hours of advanced leave. *Id.* Fennell also claims he could not make this accommodation due to budgetary restraints. *Id.*

4

Perrin provided no further administrative evidence to support her requests for leave until January 17, 2005. At that time, Perrin provided a letter from her physician indicating that she was undergoing chemotherapy, and that she was "unable to work with bacteria and caustic chemicals," or "lift the weight her current position requires." Compl., Ex. D-1, Jan. 17, 2005 Letter from W. Angus Muir.

On February 1, 2005, Perrin sent Fennell a letter requesting work accommodations. Compl., Ex. D-2, Feb. 1, 2005 Letter from C. Perrin to W. Fennell. In the letter, Perrin wrote that she could not return to work in the Wastewater Treatment Plant because her body could not "fight off the diseases from the air and water borne bacteria." *Id.* She identified job skills and qualifications she believed relevant to a potential reassignment outside of the plant. *Id.*

Porter sent Perrin another request for medical documentation on February 10, 2005. Compl., Ex. E-1, Feb. 10, 2005 Letter from W. Porter to C. Perrin. Porter stated that, based upon the physician's note from October 11, 2004, Perrin should have returned to work on or about January 12, 2005. *Id.* at 1. "However," Porter wrote, "you have not returned to duty nor have you provided medical documentation to support your continued absences from duty." *Id.* Porter requested a current assessment of Perrin's medical condition in order to make "informed decisions as to [Perrin's] employment situation." *Id.* The specific medical documentation Porter sought included an "estimated date of full or partial recovery, along with specific restrictions, which relate to attached listing of job duties." *Id.* Porter enclosed a position description and a medical release form. *Id.*

Perrin replied to Porter on February 16, 2005. In her response, Perrin stated that she had kept several employees, including Fennell, informed regarding her diagnosis. Compl., Ex. E-2, Feb. 16, 2005 Letter from C. Perrin to W. Porter. "The reason I have not returned to work," she

continued, "is because my treatment is not complete and I'm still under doctor's care." *Id.* Perrin indicated that she would ask her doctors to respond to Porter's request. *Id.*

On February 24, Porter sent Perrin a second request for medical documentation, stating that the physician's notes he had received were insufficient. Compl., Ex. E-3, Feb. 24, 2005 Letter from W. Porter to C. Perrin. Perrin then provided a letter from Dr. Muir indicating that Perrin was still undergoing chemotherapy, and that she would be unable to return to work until May 2005. Gov't Mem., Ex. 20, Mar. 2, 2005 Letter from W. Angus Muir.

Perrin returned to work on May 2, 2005. At that time, she provided her employer with a physician's letter indicating that Perrin could "return to work with no restrictions." Gov't Mem., Ex. 22, May 2, 2005 Letter from W. Angus Muir. Upon returning to work, Perrin held the same position she held prior to taking leave. Gov't Mem., Ex. 25, Perrin Resp. to Interrogs. ("Perrin Resp. to Interrogs.") 7. Throughout her absence from the plant, FLSS carried Perrin in an approved leave status—through either donated leave or leave without pay—and did not deny Perrin any health benefits. *Id.*

On September 12, 2005, Fennell issued a written refusal of Perrin's requests for advanced leave and reassignment. Gov't Mem., Ex. 26, Sept. 12, 2005 Letter from W. Fennell to C. Perrin. Fennell reiterated that, pursuant to FLSS policy, advanced annual leave was restricted to a one-time grant of up to 80 hours, and that advanced sick leave was capped at "the accrual amount available at the time of the application, for a maximum of 104 hours on a one time basis." *Id.* Fennell continued, "As you were previously granted 240 hours of advance sick leave in 2003 as well as the standing [FLSS] leave policy, I am not able to approve your request." *Id.* With respect to Perrin's request for reassignment, Fennell noted that, pursuant to organizational policy, FLSS does not provide light duty accommodations. *Id.* "If a person is unable to

6

accomplish the work required under their Position Description (PD), they will use annual, sick or leave without pay." *Id.*

*Procedural History*

Perrin filed a formal discrimination complaint on September 30, 2005. Gov't Mem., Ex. 30, Formal Complaint. In her complaint, Perrin alleged that she was subjected to discrimination based on her race, sex, and disability when her employer made a medical-related inquiry while not making such an inquiry of a white male coworker. *Id.* at 2. She also alleged that her employer had denied her request for reasonable accommodations. *Id.*

On August 8, 2007, an administrative judge for the United States Equal Employment Opportunity Commission ("EEOC") granted summary judgment to the United States Department of the Navy (the "Agency"). Gov't Mem., Ex. 31, EEOC Order 9. The judge concluded that "a reasonable fact finder . . . could not find that the Agency's medical related inquiries were the result of unlawful discrimination." *Id.* With respect to her accommodation claim, the judge found that Perrin had failed to demonstrate that she experienced "a substantial limitation in any major life activity." *Id.*

Perrin appealed the grant of summary judgment to the Equal Employment Opportunity Commission's Office of Federal Operations ("OFO"), which affirmed the decision. Gov't Mem., Ex. 32, OFO Order. The OFO found that, even assuming Perrin had a disability within the meaning of the Rehabilitation Act, she presented "no evidence that being granted [leave without pay] was an ineffective accommodation." *Id.* at 4. Moreover, as the OFO noted, Perrin had "failed to show that there were any vacant funded positions that met her medical restrictions during the relevant time period at issue." *Id.* at 5. With respect to Perrin's discrimination claim, the OFO found that "the agency . . . articulated legitimate, nondiscriminatory reasons for its

actions," *id.*, and that no evidence of pretext existed. *Id.* at 6. On April 15, 2010, the EEOC denied Perrin's request for reconsideration. Gov't Mem., Ex. 33, EEOC Denial of Reconsideration.

Perrin filed suit in this Court on July 20, 2010, reasserting her claims under Title VII of the Civil Rights Act and under the Rehabilitation Act of 1973. In support of her position, Perrin recited the exchange of communications summarized above. She also alleges that Marvin Scurlock, a white male coworker, received preferential treatment when he took leave for cancer treatment. Compl. 2. According to Perrin, Scurlock had provided Porter with a leave slip, but FLSS did not request that he complete any additional forms. *Id.* Perrin alleges that FLSS's preferential treatment of Scurlock evidences discrimination.

*Analysis*

1. Standard on Summary Judgment

A court may grant summary judgment only if the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. A fact is "material" only if it might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the party opposing the motion must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251-52. The party asserting that a fact cannot be or is genuinely

disputed must support that assertion by citing to materials in the record, including depositions, documents, and affidavits, or by demonstrating that the materials cited by the opposing party do not establish the presence or absence of a genuine dispute. FED. R. CIV. P. 56.

In an employment discrimination case, a plaintiff is entitled to *de novo* review in the district court. *Simmons v. Marsh*, 690 F. Supp. 1489, 1491 n.12 (E.D. Va. 1988) (citing *Chandler v. Roudebush*, 425 U.S. 840, 863-64 (1976)). The Court may, however, consider the administrative record in reaching its own determination on the merits. *See Chandler*, 425 U.S. at 863 n.39 (prior administrative findings are admissible in federal-sector trial *de novo*); *Simmons*, 690 F. Supp. at 1491 n.12 (administrative record "pertinent" to summary judgment determination).

2. Perrin's Rehabilitation Act claim

Perrin claims that Defendants' denial of her requests for 240 hours advanced leave and for reassignment violated the Rehabilitation Act. In order to establish a *prima facie* case under the Rehabilitation Act, a plaintiff must demonstrate "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations." *Rhoads v. Fed. Deposit Ins. Corp.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001) (quotations omitted).[3]

Perrin has failed to demonstrate that she suffers from a disability. The Rehabilitation Act defines a disability as "a physical or mental impairment that substantially limits one or more

---

[3] Liability under the Rehabilitation Act is determined using the standards set forth in the ADA. *See* 29 U.S.C. §§ 791(g), 794(d) (incorporating ADA standards of liability into the Rehabilitation Act). "Thus, whether suit is filed against a federally-funded entity under the Rehabilitation Act or against a private employer under the ADA, the substantive standards for determining liability are the same." *Myers v. Hose*, 50 F.3d 278, 281 (4th Cir. 1995).

major life activities." 29 U.S.C. § 705(9)(B). ADA regulations define "substantially limits" as meaning "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). An individual's "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Id.*; *see also Gupton v. Commonwealth of Virginia*, 14 F.3d 203, 205 n.3 (4th Cir. 1994) ("[I]n order for a plaintiff to establish that he has an impairment that substantially limits his ability to work, he must show more than merely that the impairment barred him from one particular job.").

Although Perrin identifies her breast cancer and treatment as impairments, nowhere does she allege that either impairment limited her employability across a broad range of jobs. In fact, when Perrin requested that Fennell reassign her, she identified a number of functions she could perform including data entry, meter reading, and monthly reporting. Compl., Ex. D-2, Feb. 1, 2005 Letter from C. Perrin to W. Fennell. Moreover, Perrin's alleged impairments were only short-term, temporary conditions contemporaneous with treatment. Perrin returned to her original position in May 2005, and she has been able to perform her job functions since that time. Perrin Resp. to Interrogs. 7. Such conditions are not considered disabilities within the meaning of the Rehabilitation Act. *See, e.g., Heiko v. Colombo Sav. Bank*, 434 F.3d 249, 257 (4th Cir. 2006) ("Sporadic or otherwise temporary impairments do not qualify as substantial limitations."); *Garrett v. Univ. of Alabama at Birmingham Brd. of Trs.*, 507 F.3d 1306, 1315 (11th Cir. 2007) (upholding summary judgment for defendant where "the most severe

periods of limitation that [plaintiff] suffered during her cancer treatment were short-term, temporary, and contemporaneous with her treatment.").[4]

Even if Perrin's condition qualified as a disability within the meaning of the Rehabilitation Act, Perrin cannot establish that, with reasonable accommodation, she could have performed the essential functions of her position. The Fourth Circuit has defined "essential functions," for purposes of claims arising under the ADA, as "functions that bear more than a marginal relationship to the job at issue." *Tyndall v. Nat'l Educ. Ctrs., Inc.*, 31 F.3d 209, 213 (4th Cir. 1994). Perrin's position required the ability to lift heavy objects and tolerate exposure to chemicals and infectious disease. Position Description 4-5. Perrin and her doctor stated on multiple occasions that Perrin could not perform these essential functions of her position. *See, e.g.*, Compl., Ex. D-1, Jan. 17, 2005 Letter from W. Angus Muir (stating that Perrin was "unable to work with bacteria and caustic chemicals," or "lift the weight her current position required"); Compl., Ex. D-2, Feb. 1, 2005 Letter from C. Perrin to W. Fennell (stating that Perrin could not return to work because her body could not "fight off the diseases from the air and water borne bacteria").

Given that Perrin could not perform the essential functions of her position, some manner of accommodation was required in order to keep Perrin working. Perrin "bears the burden of identifying an accommodation that would allow [her] to perform the job," as well as "the ultimate burden of persuasion with respect to demonstrating that such an accommodation is

---

[4] In her response, Perrin alleges that she also suffers from neurological, respiratory, and endocrine impairments. Pl.'s Mem. in Opp'n ("Opp'n") 5-6. Perrin does not allege that she informed her supervisors of these disabilities. Defendants are not liable for failing to accommodate conditions for which Perrin never sought accommodation. *See Rhoads v. Fed. Deposit Ins. Corp.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001) (employee must show as part of her *prima facie* case under the ADA that employer had notice of employee's disability).

reasonable." *Lamb v. Qualex, Inc.*, 33 Fed. Appx. 49, 59 (4th Cir. 2002) (citing *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 197 (4th Cir. 1997)). Perrin requested two forms of accommodation, neither of which satisfies Perrin's burden.

First, Perrin requested 240 hours of advanced leave. This accommodation would neither allow Perrin to continue performing her job, nor is it reasonable. Such a grant of advanced leave would have run counter to the Agency's policy, which limited a grant of advance annual leave to 80 hours, and limited sick leave to the amount that could be accrued in the remaining calendar year from the time of the application, for a maximum of 104 hours. The fact that FLSS had previously granted Perrin a similar request is irrelevant. An employer's one-time, good faith offer of accommodations does not bind the employer to extend similar offers in the future. "[S]uch a regime would discourage employers from treating disabled employees in a spirit that exceeds the mandates of federal law." *Myers v. Hose*, 50 F.3d 278, 284 (4th Cir. 1995).

Moreover, Perrin refused to submit medical documentation in support of her accommodation request. Under applicable regulations, "[a]n agency may grant sick leave only when the need for sick leave is supported by administratively acceptable evidence." 5 C.F.R. § 630.405(a). An employee who does not provide the required evidence or medical certification within 30 days is not entitled to sick leave. 5 C.F.R. § 630.405(b).

Perrin's protestations notwithstanding, the accommodation the Agency ultimately provided—leave without pay—is consistent with the regulations concerning accommodation of a disabled employee. *See* 29 C.F.R. Pt. 1630, App. (stating that a reasonable accommodation "could include permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment"). Although the Agency's actions did not precisely mirror Perrin's accommodations request, an employer has discretion to choose among reasonable

accommodations. *Hankins v. The Gap, Inc.*, 84 F.3d 797, 800-801 (6th Cir. 1996) ("an employee cannot make his employer provide a specific accommodation if another reasonable accommodation is instead provided") (citing *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68-69 (1986)).

Perrin's second request was for reassignment. "[A]t the summary judgment stage, the plaintiff-employee bears the burden of specifically identifying a vacant position, reassignment to which would serve as a reasonable accommodation." *Duvall v. Georgia-Pac. Consumer Prods.*, 607 F.3d 1255, 1263 (10th Cir. 2010). Perrin has not specifically identified any vacant positions for which she was qualified. As such, there is no indication that transfer to another position would have been a reasonable accommodation.[5]

3. Perrin's discrimination claims

Perrin contends that Defendants discriminated against her by requiring her to fill out paperwork that other employees were not required to complete. A plaintiff alleging unlawful discrimination may prove her case either through direct evidence of discrimination, or through the analytical framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a *prima facie* case of unlawful discrimination. *Texas Dep't of Cmty. Affairs v.*

---

[5] In her Response, Perrin asserts that two additional accommodations were possible: (1) "having another employee that holds a position at the Wastewater Plaint . . . assist[] . . . with the chemical process so that [Perrin] would not be exposed," or (2) providing Perrin with personal protective equipment, such a respirator. Opp'n 6. Perrin does not allege that she suggested either of these options to her supervisors during their process of exploring potential accommodations. Moreover, Perrin's own statements and the instructions provided by Perrin's physicians to FLSS directly conflict with these suggestions. *See, e.g.*, Compl., Ex. D-1, Jan. 17, 2005 Letter from W. Angus Muir (stating that Perrin was "unable to work with bacteria and caustic chemicals," or "lift the weight her current position required"); Compl., Ex. D-2, Feb. 1, 2005 Letter from C. Perrin to W. Fennell (stating that Perrin "could not return to the Wastewater Treatment Plant" because her body could not "fight off the diseases from the air and water borne bacteria"). As such, Perrin has failed to make a *prima facie* showing that these newly-asserted accommodations were available and reasonable.

*Burdine*, 450 U.S. 248, 252-53 (1981). A *prima facie* case of discrimination generally requires the plaintiff to establish: "(1) she is a member of a protected class; (2) she has satisfactory job performance; (3) she was subjected to adverse employment action; and (4) similarly situated employees outside her class received more favorable treatment." *Prince-Garrison v. Maryland Dep't of Health and Mental Hygiene*, 317 Fed. Appx. 351, 353 (4th Cir. 2009) (citing *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007)).

If the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendants "to articulate some legitimate, nondiscriminatory reason" for their actions. *McDonnell Douglas*, 411 U.S. at 802. Should defendants satisfy this burden, the plaintiff must then prove, by a preponderance of the evidence, that the defendants' articulated reasons were a pretext for discrimination. *Burdine*, 450 U.S. at 253. In any event, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.*

Perrin's discrimination claim fails for several reasons. First, Perrin did not suffer any adverse employment action. In order to qualify as an "adverse action," the conduct at issue must adversely affect "the terms, conditions, or benefits" of the plaintiffs' employment. *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (quotations omitted). Defendants' insistence that Perrin submit medical information in support of her extended leave did not adversely affect any term or condition of Perrin's employment. *See Wells v. Gates*, 336 Fed. Appx. 378, 383 (4th Cir. 2009) (finding that request for additional medical documentation "did not impose any disciplinary action on [plaintiff] or otherwise have a tangible employment consequence.").

Second, Perrin cannot identify a similarly situated employee who received more favorable treatment. Where a plaintiff completely bases her discrimination claim "upon a comparison to an employee from a non-protected class," the validity of her *prima facie* case "depends upon whether that comparator is indeed similarly situated." *Haywood v. Locke*, 387 Fed. Appx. 355, 359 (4th Cir. 2010) (citing *Burdine,* 450 U.S. at 258). Plaintiffs must therefore demonstrate that "they are similar in all relevant respects to their comparator." *Haywood*, 387 Fed. Appx. at 359 (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). "Such a showing would include evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Haywood*, 387 Fed. Appx. at 359 (quoting *Mitchell*, 964 F.2d at 583).

Perrin alleges that FLSS did not require a white male employee, Marvin Scurlock, to complete the same medical documentation that FLSS required of her. Scurlock's situation differs from Perrin's for several reasons. First, as the record shows, Scurlock requested only accrued leave—an earned entitlement, as opposed to advanced leave—a discretionary benefit. Gov't Mem., Ex. 28, Leave Request from M. Scurlock. Second, Scurlock provided administratively acceptable evidence—a copy of his radiology report—and a specific projected date for his return. Gov't Mem., Ex. 29, Affidavit of Marvin Scurlock 2. Third, Scurlock returned to work less than two months after surgery. Gov't Mem., Ex. 36, Letter from Domingo Suantengco. Perrin cannot make out either the third or fourth elements of a *prima facie* case, and her claims under Title VII therefore fail.

Even assuming that Perrin could establish a *prima facie* case of discrimination, she could not demonstrate that Defendants' articulated reasons for requesting medical information were a

pretext for discrimination. Agency regulations required Defendants to obtain administratively acceptable evidence before granting Perrin sick leave. 5 C.F.R. § 630.405(a). In addition, the Agency had a legitimate need to determine whether Perrin was still able to perform the essential functions of her job. *See* 29 C.F.R. § 1630.14(c) ("A covered entity may make inquiries into the ability of an employee to perform job-related functions."). The Agency also had a need to evaluate whether Perrin's condition posed a safety risk, particularly in light of the conflict between Perrin's requests for work and her physician's notes indicating that she was not cleared to do so.

If a defendant satisfies the burden of offering a legitimate, nondiscriminatory reason for an adverse employment action, the plaintiff must show that this reason "is unworthy of credence to the extent that it will permit the trier of fact to infer the ultimate fact of intentional discrimination." *Dugan v. Albemarle Cnty. Sch. Bd.*, 293 F.3d 716, 723 (4th Cir. 2002). Perrin has adduced *no evidence* in the record to suggest pretext. Indeed, given Perrin's failure to comply with her employer's request for additional information, and the Agency's decision to hold her in approved leave status nonetheless, it seems that Perrin could not come close to making such a showing.

In her Response to Defendants' Motion for Summary Judgment, Perrin apparently fashions two new discrimination claims. First, Perrin argues that Defendants' decision to place her on leave without pay constituted discrimination in violation of Title VII. According to Perrin, John Martin ("Martin"), a white male coworker, received more favorable treatment than Perrin with respect to leave policy. Opp'n 4. Second, Perrin alleges that Defendants discriminated against her when they refused to provide her temporary accommodations due to her medical condition. In support of her position, Perrin provides sworn statements from three

coworkers asserting that management had accommodated white male employees on prior occasions. Opp'n, Ex. 32, Coworker Statements ("Coworker Statements").[6]

Both of these claims fail because Perrin has identified no "similarly-situated employees outside her class [that] received more favorable treatment." *Prince-Garrison*, 317 Fed. Appx. at 353. As stated before, if a plaintiff bases her discrimination allegations upon comparisons to employees in a non-protected class, the validity of her *prima facie* case turns upon whether those comparators are in fact similarly situated. *Haywood*, 387 Fed. Appx. at 359 (citing *Burdine*, 450 U.S. at 258). The plaintiff must present evidence showing that the comparators "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Haywood*, 387 Fed. Appx. at 359 (quoting *Mitchell*, 964 F.2d at 583).

Perrin makes no such showing with respect to her claim for discriminatory application of leave policies. According to Perrin, Martin received a total of 120 hours of leave—"80 of advance annual leave and 40 hours of sick leave for the death of a family member." Opp'n 4. As previously discussed, Agency policy limits a grant of advance annual leave to 80 hours, and limits sick leave to the amount that could be accrued in the remaining calendar year from the time of the application, for a maximum of 104 hours. Martin's leave was, therefore, consistent with Agency policy. Perrin's requested leave, on the other hand, would not be. She is not similarly situated to Martin.

---

[6] Perrin also hints at this claim in her Complaint where she alleges, "Presently at the job they are providing accommodations for 2 individuals (2 caucasian males—one who has sleep apnea, and the other employee with a hearing disability), to the point where other people are doing the work for them that their doctor has explained that they can't perform anymore and the job has accommodated them." Compl. 8.

Perrin's claim regarding discrimination in the granting of work accommodations fails for the same reason. "In evaluating similarly-situated comparators, employees are similarly situated if they are similar in all relevant respects." *Bateman v. Amer. Airlines, Inc.*, 614 F. Supp. 2d 660, 674 (E.D. Va. 2009). In the work accommodations context, "relevant respects include job function, accommodation requested, and the overall effect those accommodations have on job performance." *Id.*

The coworker statements attached to Perrin's Response indicate that three white male Wastetreatment Plant Operators received accommodations for their health conditions. Mike High was permitted to skip a training session because he has only one eye. Coworker Statements 1, 3. William Wisecarver was allowed to work at a particular facility due to "his hearing and other health problems." *Id.* at 2. Steven Norbutt, who suffered from sleep apnea, was not required to perform certain tasks such as cutting grass or unloading chemicals. *Id.*

The scant information provided in these coworker statements falls far short of demonstrating that any of these three employees is similarly situated to Perrin. First, the coworker statements do not establish whether the three comparators suffered from temporary impairments, like Perrin, or from permanent disabilities for which they were legally entitled to accommodation. Second, the coworker statements do not demonstrate that the accommodation the comparators received were similar to the accommodation sought by Perrin. All three comparators appear to have received accommodations that allowed them to continue performing the job of Operator. Perrin, on the other hand, asked that FLSS transfer her to a new position entirely.

Perrin has entirely based her discrimination allegations upon comparisons to employees in a non-protected class. As such, her *prima facie* case must demonstrate that the comparators

she identifies are indistinguishable in all material respects. *Haywood*, 387 Fed. Appx. at 359. Perrin's submissions do not satisfy this requirement. The Court must, therefore, grant judgment to Defendants on these claims.

*Conclusion*

The evidence in the record presents no genuine dispute of material fact necessitating submission of this matter to a jury. For the reasons stated, it is hereby ORDERED that Defendants' Motion for Summary Judgment is GRANTED. Plaintiff's claims against Defendants are DISMISSED WITH PREJUDICE.

Alexandria, Virginia
March 2, 2011

/s/
Liam O'Grady
United States District Judge